## ENID CITY RY. CO. v. CITY OF ENID.

No. 2990. Opinion Filed November 24, 1914.

(144 Pac. 617.)

1. PLEADING—Rulings on Pleadings—Waiver of Error—Submission on Agreed Statement. Defendant filed its motion to require plaintiff to separately state and number its causes of action, and to require plaintiff to elect whether it stood upon its right of action at law, or right of action in equity, which motion was overruled. Subsequently defendant filed a demurrer to plaintiff's petition, which was overruled. Thereafter said cause was submitted and tried upon an agreed statement of facts. Held, the agreed statement of facts superseded the pleadings; and if any error was committed by the court in its ruling on the sufficiency of the pleadings, the same was waived by the parties submitting said cause upon an agreed statement of facts.

2. CONSTITUTIONAL LAW — Impairment of Contract — Vested Rights—Street Railway Franchise. Under sections 1408, 1409, and 1410, Comp. Laws 1909 (Rev. Laws 1910, secs. 1482, 1483), the city of Enid was authorized to grant the franchise in question

to defendant for the construction of a certain street railway. The provision of the franchise, in so far as material here, is as follows: ''And whenever the said city of Enid shall hereafter pave or repave any streets upon which said lines of street railways are constructed, it shall be the duty of the said grantee, his successors and assigns, to construct or pay the cost of construction of the total width in area along the streets so occupied, or six and two-thirds feet for each track occupying such street; and where double tracks are laid upon any street, said grantee, his successors or assigns, shall pave between said tracks, according to specifications adopted by said council.'' The said franchise was accepted, the line of railway constructed thereunder, and all the rights of the parties were fixed prior to statehood. Held, that said franchise, when accepted, constituted a valid contract between the city of Enid and defendant, the impairment of which by the state or the city of Enid is prohibited by section 10, article 1, of the Constitution of the United States. Held, further, that section 610, Rev. Laws 1910, should not be given a retroactive effect, so as to destroy vested rights, or so as to have the effect of impairing the obligations of contracts; that the ordinance of the city of Enid, passed in pursuance thereof, imposing other burdens on defendant and requiring it to pave 26 inches in addition to the amount it agreed to pave under said contract, is invalid, so far as it affects the rights of defendant under said contract.

3.     MUNICIPAL CORPORATIONS—Cost of Paving—Street Railway Company. The judgment of the trial court, finding in favor of the city of Enid against defendant for the cost of paving thirteen inches in addition to that which defendant agreed to pave, is erroneous, in that it is contrary to law.

(Syllabus by the Court.)

*Error from District Court, Garfield County;
James B. Cullison, Judge.*

Action by the City of Enid against the Enid City Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, with direction.

*Carl Kruse,* for plaintiff in error.

*A. L. Zinser,* for defendant in error.

RIDDLE, J.   This cause was tried upon the following agreed statement of facts:

"It is hereby stipulated and agreed between the parties hereto that the city of Enid is a city of the first class under the laws of the then territory, now state of Oklahoma; that the defendant, the Enid City Railway Company, was incorporated

under the laws of the then territory of Oklahoma on the ———— day of February, 1907, and that articles of incorporation were filed and a charter issued by the proper authorities of the then territory of Oklahoma, under and by virtue of article 4 of chapter 9 of Session Laws of 1903, and that on the 4th day of January, 1907, the city of Enid granted Ordinance No. 428 to C. H. Bosler, his successors and assigns, for a term of 50 years, a franchise on behalf of defendant company to be thereafter incorporated to construct and maintain an electric street railway system and power system in the streets and alleys of the city of Enid, under and by virtue of article 4, c. 9, Sess. Laws 1903; that Ordinance No. 428 of the city of Enid was regularly passed and approved by the said city, a copy of which is attached hereto and made a part hereof; that the defendant, the Enid City Railway Company, is the corporation that was organized to construct, operate, and maintain as the grantee in said ordinance said system of street railway, and that said defendant, the Enid City Railway Company, is at this time, and has at all times since the granting of said franchise been, operating the system of street railways in the city of Enid, Okla., under said Ordinance No. 428, and that at other times, prior to the time the paving, set out in the plaintiff's petition, was contracted for and laid, the plaintiff had caused to be paved several other streets in which defendant has its tracks and operates its cars, and that all such paving done or caused to be done by the plaintiff, prior to the paving set out in plaintiff's petition, was done and paid for in accordance with said Ordinance No. 428, and the defendant was required to pave, or pay for, six and two-thirds feet only, for each track and the space between the tracks where double tracks were laid in said streets.

"It is further agreed and stipulated that the defendant, the Enid City Railway Company, accepted Ordinance No. 428, in writing, in due time, as required by said ordinance, and that said defendant company expended large sums of money in constructing the street railway system, under said ordinance, and that it has maintained said street railway system in accordance with said ordinance, and that all of the tracks in the streets along which the paving is laid for which plaintiff brings this action, and as set out in plaintiff's petition, were constructed and cars operated thereon prior to the 4th day of July, 1907; that Ordinance No. 428, under which the defendant company operates, has not been amended, modified, or changed in any manner by the city of Enid, except in so far as the ordinance to pave the additional thirteen inches set out in plain-

tiff's petition might modify the same, said ordinance being passed over and against the objection of the defendant.

"It is also agreed that the plaintiff, the city of Enid, served notice upon the defendant company to pave between the tracks upon the streets set out in plaintiff's petition and two feet on the outside thereof, and that the defendant, the Enid City Railway Company, served a notice in writing upon the proper officer of the city of Enid, the plaintiff, that it objected to paving more than six and two-thirds feet for each track, and that it elected to do its own paving, as provided by the ordinance granting a franchise to the defendant company, to wit, Ordinance No. 428.

"It is further stipulated and agreed that the city of Enid at the time of passing the ordinance requiring the Enid City Railway Company to pave the additional two feet, which is Ordinance No. 596, and made a part hereof, had taken all necessary steps required by law to cause to be paved, graded, curbed, guttered, and drained that part of Grand avenue and Walnut street in said city described in plaintiff's petition; and that such streets have been so paved, graded, guttered, and drained; and that the Enid City Railway Company, the defendant in this action, paved at its own cost and furnished all the material therefor, six and two-thirds feet for each track and the space between the tracks where double tracks were laid in said streets, as required by Ordinance No. 428; and that the city of Enid paved the balance, to wit, including the thirteen inches as set out in plaintiff's petition, on the outside of each rail by a contract let to the Warner-Quinlan Paving Company; and that the city has charged the costs of the same to the Enid City Railway Company, which it is seeking to recover in this action; and that the amount thereof is $1,407.23; that demand for the $1,407.23 has been made by the city of Enid upon the Enid City Railway Company; and that such amount, or any part thereof, has not been paid; that all of the acts done by the city of Enid in regard to the paving of the streets mentioned and set out in plaintiff's petition were had and done since the act of the Legislature was passed, April 17, 1908, and since September 25, 1908, when the first resolution was passed.

"[Signed] Chas. A. Helsell,
"City Attorney.

"Carl Kruse,
"Attorney for Defendant."

That part of Ordinance 428 here involved is as follows:

"And whenever the said city of Enid shall hereafter pave or repave any streets upon which said lines of street railways are constructed, it shall be the duty of the said grantee, his successors and assigns, to construct or pay the cost of construction of the total width in area along the streets so occupied, or six and two-thirds feet for each track occupying such street; and where double tracks are laid upon any street, said grantee, his successors or assigns, shall pave between said tracks, according to specifications adopted by said council."

Plaintiff in error relies upon the following assignments of error: (1) The court erred in overruling defendant's motion to require plaintiff to separately state and number its several causes of action and to require the plaintiff to elect whether it stands upon its right of action at law, or upon its right of action in equity; (2) the court erred in overruling defendant's demurrer to plaintiff's petition; (3) the judgment of the court is contrary to the evidence; (4) the judgment of the court is contrary to law; (5) the court erred in overruling defendant's motion for a new trial; (6) error of law occurring at the trial and excepted to by defendant; (7) the court erred in rendering judgment against defendant. The matters included in the eighth, ninth, tenth, and eleventh assignments are covered by the fourth, fifth, and seventh, and it is not necessary to set them out.

The agreed statement of facts upon which this cause was tried superseded the pleadings, and any defects in the pleadings or any error relating to any ruling of the court in passing upon the sufficiency of same, were immaterial and harmless, hence we need not notice further assignments 1 and 2. 31 Cyc. 724.

The only question remaining to be determined, discussed under assignments of error from 3 to 10, inclusive, and briefly stated, is whether or not the act of the Legislature of 1908 (Laws 1907-1908, c. 10), and City Ordinance No. 596 of the city of Enid, passed in pursuance thereof, are valid, so far as applied to the property of plaintiff in error here involved. It is counsel's contention that under sections 1408, 1409, and 1410, Comp. Laws 1909 [Rev. Laws 1910, secs. 1482-1484], the city of Enid was authorized to enter into a contract to grant certain franchises,

rights, and privileges to plaintiff in error; that in pursuance of said provisions of the statute, the city of Enid did, by virtue of Ordinance No. 428, enter into a contract with plaintiff in error, whereby plaintiff in error was required to pave only the total width in area along the street so occupied by it, or six and two-thirds feet for each track occupying such street; that such franchise, under the law, is a valid contract between plaintiff in error and the city of Enid; that the act of the Legislature of 1908, *supra,* requiring the city of Enid to charge plaintiff in error the cost of paving six and one-half inches additional on either side of said railway track, making in all 26 inches, is in conflict with section 10, article 1, of the Constitution of the United States, prohibiting the state from impairing the obligation of contracts, and also that it is in conflict with article 5 of the amendments to the Constitution of the United States, which is an inhibition upon the states from taking private property without due process of law, or from taking private property for public use without reasonable compensation. Defendant in error contends that on the date of the incorporation of plaintiff and on the date the franchise was granted to plaintiff in error, section 932, Wilson's Rev. & Ann. Statutes (section 1255, Comp. Laws 1909 [Rev. Laws 1910, sec. 1211]), was in force, which section provides:

"Every grant of corporate power is subject to alteration, suspension or repeal, at the discretion of the Legislature."

It is further contended that under section 1340, Comp. Laws 1909, which provides that "the Legislature may at all times amend this chapter, or any article or section thereof," the state thereby reserved the right to amend or alter or suspend any charter or article of incorporation; and that it may be done without violating the provisions of the United States Constitution, as contended by plaintiff in error. Defendant in error further relies upon the rule laid down by this court in the case of *Oklahoma City v. Shields et al.,* 22 Okla. 265, 100 Pac. 559, and contends that the points decided in that case are conclusive against plaintiff in error upon every point raised here. It must be kept in mind that this contract was entered into prior to the

adoption of our Constitution, and that the reserved power therein is not applicable or involved here.

Under the powers reserved by sections 1255 and 1340, Comp. Laws 1909 (Rev. Laws 1910, sec. 1211), the state is undoubtedly authorized to alter, suspend, or repeal any grant of corporate power, and may likewise amend the charter relative to corporations whenever and in such manner as it may deem consistent with the powers granted under the Constitution, and when not inconsistent with the provisions of the Constitution of the United States. The right to exercise this power reserved to the state, we understand, is not controverted by plaintiff in error. There is a marked distinction in the state exercising its rights under sections 1255 and 1340, *supra,* and in an attempt to abrogate or impair vested rights, growing out of contractual relations. Or, to state it in another way: There is a wide difference in the power of the state to repeal, suspend, or amend authority granted to a corporation by virtue of its reserved power, and in impairing or destroying rights growing out of a contract entered into by the corporation with a municipality or an individual. The state has not reserved the power to abrogate or impair a contract, entered into by and between the municipality and plaintiff in error, and hence the exercise of such power is prohibited by the Constitution of the United States as an impairment of the obligation of a contract. The power of the Territorial Legislature to authorize the city of Enid to pass the ordinance in controversy, or to enter into the contract under consideration, is not questioned; neither is it questioned that the Legislature did specifically authorize said city to pass such ordinance and to enter into said contract. Section 1409, Comp. Laws 1909 (Rev. Laws 1910, sec. 1483), provides:

"Such corporations in addition to the powers exercised by railroad corporations generally, may, with the consent of the authorities of any city or town in the state of Oklahoma located upon or along its lines, construct system of street railways upon such streets and upon such terms and conditions as may be agreed upon between such corporations and such city or town,  *  *  *  or such railways or such corporation may also acquire by purchase or consolidation, plants, franchises,

contracts, good will and other property of any existing street railway or lighting company."

Under this section, it cannot be doubted that the city of Enid was authorized to pass the ordinance in question. That such ordinance, when accepted by plaintiff in error, the terms and conditions thereof complied with, and the street railway lines constructed thereunder, constitutes a valid contract must be admitted. *City of Chicago v. Sheldon,* 9 Wall. 50, 19 L. Ed. 594; *Ry. Co. v. City of Savannah* (C. C.) 30 Fed. 646; *State v. Ry. Co.,* 85 Mo. 263, 55 Am. Rep. 361; *District of Columbia v. Ry. Co.,* 4 Am. & Eng. R. R. Cas. 174; *Farrar v. City of St. Louis,* 80 Mo. 379; *New Orleans Gaslight Co. v. Louisiana Light Co.,* 115 U. S. 660, 6 Sup. Ct. 252, 29 L. Ed. 516; *Greenwood v. Freight Co.,* 105 U. S. 13, 26 L. Ed. 961; *New Jersey v. Yard.* 95 U. S. 104, 24 L. Ed. 352.

In the case of *Oklahoma City v. Oklahoma Street Ry. Co.,* 20 Okla. 1, 93 Pac. 48, 16 L. R. A. (N. S.) 651, this court, speaking through Chief Justice Williams, stated:

"We are of the opinion that this contract which existed between Oklahoma City, the relator herein, and the Oklahoma Railway Company, the respondent herein, was not only a valid contract prior to the adoption of this Constitution, but is also now a valid contract, and not in conflict with section 13 of article 9 of said Constitution, and that the former is entitled to the relief prayed for."

It is said, however, that the contract in question does not expressly exempt the street railway company from other burdens; neither did the city agree not to impose other burdens. We do not so construe the language of the ordinance. The language of the section of the ordinance quoted *supra* is equivalent to saying that said street railway shall pave six and two-thirds feet for each track, and where it has double tracks, the space between such tracks, and no more. This is one of the conditions upon which the franchise was granted and accepted. The city, by Ordinance 596, passed in pursuance of the act of the Legislature of 1908, has attempted to abrogate that portion of the contract relative to the amount of paving required to be done by plaintiff in error, and has charged plaintiff in error with

the cost of paving six and one-half inches additional on each side of the track, or a total of thirteen inches, without the consent of plaintiff in error. The question is: Is this an impairment of the contract in question, so as to be prohibited by the provisions of the Constitution of the United States?

In defense of the action of the trial court in rendering the judgment complained of, defendant in error relies upon the opinion of this court in the case of *Oklahoma City v. Shields, supra.* That was a case submitted to the trial court upon an agreed statement of facts, where it was sought to secure an adjudication of the rights of the parties relative to the amount plaintiff should pay for paving in front of certain lots and blocks in Oklahoma City. The street railway company was not a party to that suit, and of course its rights could not have been directly adjudicated. However, the rights of the street railway company and the construction of its contract or franchise were discussed as though they were directly involved. But the street railway company was not a party to that suit, and the judgment rendered therein could not have been enforced against it.

The provisions of the franchise in that case seem to be in the exact terms of the franchise in the case at bar; and the learned Chief Justice in the opinion seems to have treated the question involved as a general power of the state to collect general taxes, and does not seem to have treated it as a contractual relation, existing between the parties. We arrive at this conclusion from the quotation taken by Chief Justice Williams from the case of the *Union Passenger Railway Co. v. Philadelphia,* 101 U. S. 528, 25 L. Ed. 912, as follows:

"Stipulations, in a statute of a state, exempting certain property, rights, or franchises from taxation, or engaging that the same shall be taxed only at a certain rate, if made for a valuable consideration received by the state whose Legislature enacted the stipulation, is a contract, and as such comes within the rules of decisions specifying the description of contracts entitled to protection from modification or repeal under the guaranty of the tenth section of the first article of the Constitution. Exemptions of the kind, however, are to be strictly construed, the rule being that the right of taxation exists unless the ex-

emption is expressed in clear and unambiguous terms, and that, in order that it may be effectual, it must appear that the contract was made in consequence of some beneficial equivalent received by the state, it being conceded that if the exemption was granted only as a privilege, it may be recalled at the pleasure of the Legislature. Cooley, Const. Lim. (4th Ed.) 342; Cooley, Tax. 146."

If plaintiff in error in this case was attempting to escape its proportionate share of taxes under the provisions of the contract in question, then undoubtedly the contract would be no protection, and the Legislature would not be prohibited by the provisions of the federal Constitution from imposing such taxes, any provision of the franchise to the contrary. The city would not have been authorized under the provisions of the law to exempt the railway company from paying its proportionate share of taxes; neither would the Legislature have been authorized to delegate or bargain away its taxing power. Again, if the railway company was resisting the state or municipality in exercising such reasonable regulations under its police power, it could not successfully do so. This latter question is similar to the one involved in the case of *Pioneer Tel. & Tel. Co. v. State,* 33 Okla. 724, 127 Pac. 1073, and the case of *Oklahoma Railway Co. v. Powell,* 33 Okla. 737, 127 Pac. 1080. The question involved in the Pioneer Telephone & Telegraph Company case, *supra,* was as to the power of the city to grant the provision of the franchise relied upon by the company. This court held that the power had not been granted to the city to authorize the grant of such franchise and privileges, and that that part of the franchise of the city granting to the company the right to fix telephone rates, etc., was void. The questions there involved were different from the question involved here, and controlled by an entirely different rule of law. If the franchise in question constitutes a valid contract between plaintiff in error and the city of Enid—and we hold it does—there can be no question but the subsequent act of the Legislature and Ordinance No. 596 passed in pursuance thereof, attempting to compel said street railway company to pay for additional paving other than it contracted to pay, is an infringement and impairment of its contract. The only question now to

be determined is: Did the Legislature, by sections 1255 and 1340, *supra,* reserve the right to impose such additional burdens, or to impair the contract as is attempted to be done in this case? We are of the opinion that this question must be answered in the negative.

In the case of *Oklahoma City v. Shields, supra,* the authorities quoted from and relied upon by the court do not sustain the conclusion reached, so far as the construction placed upon the provisions of the contract relative to paying, which were incidentally involved in that case. One of the main cases relied upon was that of *Sioux City Street Ry. Co. v. City of Sioux City,* 138 U. S. 105, 11 Sup. Ct. 226, 34 L. Ed. 898. That case arose in the state of Iowa, and a judgment was rendered by the trial court in favor of the city and affirmed by the Supreme Court of Iowa, and then reaffirmed by the Supreme Court of the United States. Section 1090 of the Code of Iowa, which was in force when the railway company was incorporated, provided as follows:

"The articles of incorporation, by-laws, rules, and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be, at any time, altered, abridged, or set aside by law, and every franchise obtained, used, or enjoyed by such corporation, may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the General Assembly shall deem necessary for the public good."

The Supreme Court of the United States, quoting the language of the Supreme Court of Iowa, stated:

"The Supreme Court of Iowa, in view of section 1090, held that the city of Sioux City, by granting the authority to construct and operate the railway on the condition of paving between the rails, did not limit its authority to make and enforce other regulations and requirements, as authorized by section 1090; that although by the contract the company bound itself to pave between the rails, the city did not bind itself not to exercise the authority conferred upon it by section 1090, to impose other conditions upon the exercise of the franchise of the company, which, in the judgment of the city, might be required for the public good; and that the city was authorized

to impose on the company the burden of the additional paving outside of the rails. * * * The company took its franchise subject to such legislation as the state might enact. This is plain from the provision of section 1090 of the Code. The company took its charter subject to the provisions of that section. The General Assembly deemed it necessary for the public good to require street railways to pay the paving of one foot outside of the tracks, probably upon the view that it was right that they should be required to pave that part of the street which they used almost exclusively. It was not in the power of the city, by any contract with the company, to deprive the Legislature of the power of taxing the company. *Union Pass. R. Co. v. Philadelphia,* 101 U. S. 528 [25 L. Ed. 912]; *Spring Valley Waterworks v. Schottler,* 110 U. S. 347 [4 Sup. Ct. 48, 28 L. Ed. 173]; Morawetz on Private Corporations, secs. 1061, 1062, 1066, 1085, 1095, 1097. * * * Under section 1090 of the Iowa Code, the Legislature had the power not only to repeal and amend the articles of incorporation of the company, but to impose any conditions upon the enjoyment of its franchise which the General Assembly might deem necessary for the public good. The reservation of this power was a condition of the grant. The city council could make no arrangement with the company which would not be subject, under that section, to the superior power of the General Assembly. * * * No question can arise as to the impairment of the obligation of a contract, when the company accepted all of its corporate powers subject to the reserved power of the state to modify its charter and to impose additional burdens upon the enjoyment of its franchise. Under the Act of March 15, 1884, it was made a condition of the enjoyment of its franchise by the company that, when the city should determine that the streets should be paved, the company should bear a certain portion of the cost thereof; and any prior contract between the company and the city in regard to paving was subject to the provisions of section 1090 of the Code."

It will be seen, under the Iowa statute, it not only reserved the power to alter, amend, or repeal the charter of the company, but also the power to regulate, withhold, or to subject conditions imposed upon the enjoyment of every franchise granted to any such corporation by virtue of its charter.

Coming directly to the point involved here, the authorities relied upon by plaintiff in error can be distinguished from the

cases cited and quoted from by this court in the case of *Oklahoma City v. Shields, supra.*

The case of *Omaha Water Co. v. Omaha,* 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614, involved an act of the Nebraska Legislature wherein it was provided:

"And the mayor and council of each city created and governed by said act * * * shall have power to * * * maintain waterworks on such terms and under such regulations as may be agreed on."

The first paragraph of the syllabus in that case reads:

"The Legislature empowered the city of Omaha to contract with individuals or corporations for the construction and maintenance of waterworks 'on such terms and under such regulations as may be agreed on.' The city by ordinance offered the contract for the construction of the works and their operation for 25 years to the lowest bidder on condition that he would first accept the terms of the ordinance, which provided that the contractor should furnish water to private consumers during the term at such prices as the contractor and the consumers should agree upon, not exceeding certain specified rates. The contractor accepted the ordinance and his assigns constructed the waterworks and operated them for twenty years. The water board of the city ordered the rates reduced below those specified in the ordinance. *Held,* the accepted ordinance was a contract, the order of the water board impaired its obligation, and the water company was entitled to an injunction to restrain its execution."

In the case of *Coast-Line R. Co. v. City of Savannah* (C. C.) 30 Fed. 646, it was said in the first paragraph of the syllabus:

"A city ordinance, authorizing the construction of a street railway, containing, with many other mutual stipulations, this clause, 'in the event of the paving by the city of the whole or any portion of the street used by said railway company, the portion of the track between the rails shall be paved and kept in good order and thorough repair by the company at its own expense and cost,' which stipulations are assented to by the railway company, and the railway constructed thereunder, is a contract between the city and the railway company."

And in the body of the opinion, it is said:

"This was the limit of the paving to be done by the company. 'Expressio unius est exclusio alterius.' This maxim is never more applicable than when applied to the interpretation of a statute. In construing this contract, it is the necessary presumption that the railroad company agreed, in consideration of the privileges granted it by the city, to pave between its tracks, and no more; and this obligation is as binding on the city as it is on the company. Therefore, a subsequent act of the Legislature, requiring it to pave a lateral addition of six feet, bears on the contract to the advantage of the city, and to the injury of the company, and 'impairs the obligation.'"

In the case of *City of Chicago v. Sheldon,* 76 U. S. (9 Wall.) 50, 19 L. Ed. 594, the provision of the charter involved was as follows:

"The said company shall, as respects the grading, paving, macadamizing, filling, or planking of the streets, * * * upon which they shall construct their said railways, or any of them, keep eight feet in width along the line of said railway on all the streets whenever one track is constructed, and sixteen feet in width along the line of said railway [on all streets] where two tracks are constructed, in good repair and condition during all the time to which the privileges hereby granted to said company shall extend."

Thereafter, the city attempted to charge the street railway company with additional paving. The Supreme Court said:

"Now, it is quite clear that the above recitals embrace the whole subject of improvements of the streets, and that it was present to the minds of the parties when entering into the stipulation respecting repairs that followed. And this being so, it is difficult to deny but that these stipulations were made as fixing the proportion or share of these general improvements which should be imposed on the company."

It was further said in the syllabus:

"Where a contract is valid at the time, by the laws of the state, its Legislature cannot pass an act impairing its obligation, nor can any decision of its court have that effect."

See, also, *Indianapolis E. Ry. Co. v. Town of Newcastle,* 43 Ind. App. 467, 87 N. E. 1067; *Village of Madison v. Alton, G. & S. T. L. Traction Co.,* 235 Ill. 346, 85 N. E. 596; *Western Pav. & Supply Co. v. Citizens' Street Ry. Co.,* 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, 10 L. R. A. 770, 25 Am. St. Rep. 462.

In the case of *City of Minneapolis v. Minneapolis Street Ry. Co.*, 215 U. S. 417, 30 Sup. Ct. 118, 54 L. Ed. 259, the provision of the charter read:

"That the city shall not reduce the passenger's fare below 5 cents, over any one continuous line. * * *"

Subsequently, the city passed an ordinance, requiring that the company should operate a road by the sale of six tickets for 25 cents. The court said:

"We think that the requirement of the ordinance that the company should operate its roads by the sale of tickets six for a quarter, as required by the ordinance of February 9, 1907, was an enactment by legislative authority which impaired the obligation of the contract thus held and owned by the complainant company."

See, also, *Cleveland v. Cleveland Elec. R. Co.*, 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102. In *Grand Trunk Western Ry. Co. v. South Bend*, 227 U. S. 544, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405, Mr. Justice Lamar, delivering the opinion of the court, after referring to the rule laid down by the Supreme Court of Indiana, stated:

"These rulings accord with the decisions in other jurisdictions and by this court in *Louisville v. Cumberland Telephone Co.*, 225 U. S. 430 [32 Sup. Ct. 741, 56 L. Ed. 1151], holding that an ordinance conferring a street franchise, passed by a municipality under legislative authority, created a valid contract, binding and enforceable according to its terms."

After referring to decisions of many other courts, the court further said:

"Obviously, upon the clearest considerations of law and justice, the grant of authority to defendant when accepted and acted upon, became an irrevocable contract, and the city is powerless to set it aside. *St. Louis v. Western Union Telegraph Co.*, 148 U. S. 92 [13 Sup. Ct. 485, 37 L. Ed. 380]."

Again, in the case of *Owensboro v. Cumberland Telephone Co.*, 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389, Mr. Justice Lurton, speaking for the court, said:

"To construe this general power of repeal as a reservation of power to revoke or destroy contractual rights which have vested under an ordinance, which upon its face makes no such reservation, would be to place every contract made

by the city by virtue of an ordinance legislative in form, sub- ject to the mercy of changeable city councils. In the absence of an express reservation in the contractual ordinance, or an express delegation of power to revoke contracts under such ordinances, we think no such extraordinary power is to be implied. *Ashland v. Wheeler,* 88 Wis. 607 [60 N. W. 818]."

After referring to reservation of power in the Legislature to amend, alter, or repeal at pleasure certain articles of incorporation, which is in practically the same language of our statute, the court stated:

"This clause of the charter in the instant case reserves no more than the power to repeal, as well as to make and amend ordinances, but by no means operates to convey the power to 'repeal' a grant of street rights which had been accepted. and had thereby become a contract under the protection of the contract clause of the Constitution. That the right may be reserved to destroy a contract may be conceded; but when such a right is claimed, it must be clear and explicit. The contention here advanced, if conceded, would paralyze the contractual power of the city, for if it has application to this ordinance, it would equally apply to every other contractual ordinance, which the city might enact, though the contract had been accepted and expenditures made."

*Boise Water Co. v. Boise City,* 230 U. S. 84, 33 Sup. Ct. 997, 57 L. Ed. 1400.

Neither the Legislature nor the city of Enid reserved the power generally or specifically in the franchise in question to modify by adding additional burdens, or to abrogate the contract, and it was not within the power of the Legislature or the city of Enid to impair the obligation of such contract in the manner attempted in this case. If the city of Enid could require the railway company to pave 26 inches in addition to the amount agreed to be paved, contrary to its consent, and in violation of its contract, then it could require said railway company to pave thirteen feet, should the public good require it; or, if the contract can be violated in this respect, it can in any other respect, and it will be seen that this is clearly in violation of the provisions of the federal Constitution. As a policy of the government, what the city undertook to do in this case, as applied to the situa-

tion, may be very just and equitable; but with this the court has nothing to do. The court cannot inaugurate policies; neither can it assist in carrying them into effect, when contrary to sound rules or the organic law, and when clearly in contravention of the federal Constitution.

From the foregoing, we are of the opinion that the Act of the Legislature of 1908, and Ordinance No. 596, passed in pursuance thereof, attempting to collect from defendant the cost of making additional pavements other than it agreed to make, were an impairment of the obligation of its contract, and prohibited by the federal Constitution. Therefore the judgment of the trial court is erroneous and must be reversed, with direction to set aside the judgment and proceed in accordance with this opinion.

All the Justices concur.